ANTONIA M. APPS
REGIONAL DIRECTOR
Thomas P. Smith, Jr.
Adam S. Grace
Paul G. Gizzi
Brenda Wai Ming Chang
John C. Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY  10004-2616
212-336-0077 (Gizzi)
Email: gizzip@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>Eleazar Kauderer,<br><br>　　　　　　　　　　Defendant. | COMPLAINT<br><br>23 Civ. _____ (    )<br><br><br>JURY TRIAL DEMANDED |

　　　　Plaintiff Securities and Exchange Commission ("Commission" or "SEC"), for its Complaint against Defendant Eleazar Kauderer ("Kauderer" or "Defendant"), alleges as follows:

**SUMMARY**

　　　　1.　　This action concerns Kauderer's participation in a fraudulent scheme to promote the stock of a struggling microcap issuer from at least July 2017 to at least November 2019.

　　　　2.　　In August 2021, the Commission filed a related action concerning the same fraudulent scheme to promote the microcap issuer's stock, *SEC v. GPL Ventures LLC, et al.,* 21-cv-6814 (AKH) (S.D.N.Y.) (the "Related SEC Action").

3. The complaint in the Related SEC Action described how Kauderer helped the struggling microcap issuer and the other defendants (the "Related SEC Action Defendants," identified below) carry out a lucrative, secret scheme to promote the microcap issuer's stock.

4. Specifically, the complaint in the Related SEC action alleged that Kauderer (identified therein as "Individual A") participated in the scheme to facilitate certain defendants: (i) acquiring shares of the microcap issuer's stock for their own benefit prior to recommending or touting the stock to others; (ii) failing to disclose in the tout the full details of their ownership of the shares and their plans to sell them; and (iii) selling the shares following the tout's dissemination, and into the increased share price and trading volume triggered by the touting.

5. As alleged further below, and in the Related SEC Action, Kauderer knowingly participated in the scheme by orchestrating fraudulent promotional campaigns. As Kauderer understood, the Related SEC Action Defendants needed the promotional campaigns to facilitate the scheme. Further, the promotional campaigns concealed the fact that certain of the Related SEC Action Defendants funded the promotions.

## **VIOLATIONS**

6. By virtue of the foregoing conduct and as alleged further herein, Kauderer has violated Sections 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (3)], and Section 10(b) [15 U.S.C. § 78j(b)] of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

7. Unless Kauderer is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

9. The Commission seeks a final judgment: (a) permanently enjoining Kauderer from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Kauderer to disgorge all ill-gotten gains he received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78(u)(d)(5), and 78u(d)(7)]; (c) permanently prohibiting Kauderer from participating in any offering of a penny stock, pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

11. Kauderer, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

12. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including Kauderer orchestrating promotional work for the struggling microcap issuer, which is headquartered in

New York, and communicating with other Related SEC Action Defendants, including entities headquartered in New York.

## DEFENDANT

13.     **Kauderer**, age 48, resides in Englewood Cliffs, New Jersey.  Kauderer, individually and through entities he owns or operates, is in the business of providing stock promotional services to microcap issuers.  He has held Series 7 and 63 securities licenses, which are now expired.  He was a registered representative at several registered broker-dealers from 2000 through 2004.  In 2003, Kauderer pled guilty to conspiracy to commit mail and wire fraud, and was sentenced to a two year prison term.  *United States v. Graziano, et al.*, 02-cr-60049 (S.D. Fla.; criminal minute Jan. 23, 2003; judgment entered Apr. 8, 2004).

## RELATED SEC ACTION DEFENDANTS

14.     The **Related SEC Action Defendants**, named as defendants in the Related SEC Action, are: (i) GPL Ventures LLC, GPL Management LLC, Alexander J. Dillon ("Dillon"), and Cosmin I. Panait (collectively, the "GPL Defendants"); (ii) Lawrence B. Adams ("Adams"), now deceased, and his entity Seaside Advisors, LLC ("Seaside"); and (iii) HempAmericana, Inc. ("HempAmericana"), the struggling microcap issuer, and its CEO Salvador E. Rosillo ("Rosillo").  During the period of time relevant to the allegations in this action and in the Related SEC Action: (i) the GPL Defendants were in the business of privately acquiring and publicly selling the securities of microcap issuers; (ii) Seaside, owned by Adams, purportedly provided consulting services to various microcap companies to assist with, among other things, marketing, public relations, and general business advice; and (ii) HempAmericana (ticker OTC BB: HMPQ), through its CEO Rosillo, purportedly researched, developed, and sold products made of industrial hemp, including cannabidiol (or CBD) oil.

4

## FACTS

## THE HEMPAMERICANA FRAUD SCHEME

15.     From 2017 through 2019, Kauderer, together with the Related SEC Action Defendants, engaged in a fraudulent scheme involving the stock of the struggling microcap issuer, HempAmericana.

16.     The HempAmericana scheme can be summarized as follows: (1) the GPL Defendants repeatedly acquired HempAmericana stock, purportedly sold pursuant to the Regulation A registration exemption, conditioned on a portion of the stock sales proceeds being sent by HempAmericana to Seaside; (2) Seaside then paid Kauderer, a professional stock promoter, to promote the stock; (3) Kauderer hired promoters who in turn hired other promoters, to assist with promoting the stock; and (4) the GPL Defendants sold the HempAmericana stock they held during the promotional campaigns.

17.     The HempAmericana promotional campaigns were fraudulent because they did not disclose: (i) that the promotions were indirectly funded by the issuer, HempAmericana, using proceeds received from the GPL Defendants, the most significant purchaser in HempAmericana's Regulation A offerings, which funds the GPL Defendants had ear-marked to fund the promotional campaigns; or (ii) that the GPL Defendants intended to sell their large stock holdings during the promotions.

18.     HempAmericana's Regulation A offering circulars misleadingly failed to disclose that significant portions of the stock sales proceeds would be used for stock promotion.

   **A. The GPL Defendants' Share Acquisitions in HempAmericana Prior to Kauderer's Promotion**

19.     HempAmericana, a struggling microcap CBD company with a factory and equipment aimed at processing, bottling, and selling hemp-based products, had never been

profitable since its incorporation in February 2014. Indeed, from 2017 through May 2020, HempAmericana generated a mere $9,727 in revenues. Disclosure statements filed on OTCMarkets' website noted that the company had to raise funds in order to finance operations.

20. HempAmericana stopped filing financial information with OTCMarkets in July 2020, and its stock was quoted with a "STOP" sign, an OTCMarkets designation denoting companies "that may not be able or willing to provide current disclosure to the public markets."

21. In June 2017, HempAmericana began issuing and selling unrestricted Regulation A shares to the GPL Defendants. From July 2017 to November 2019, the GPL Defendants acquired the majority of the unrestricted shares issued by HempAmericana.

22. After acquiring HempAmericana stock, the GPL Defendants would only purchase additional shares in Regulation A offerings if they could first successfully sell their existing shares into the market.

23. Regulation A offering circulars that Rosillo and HempAmericana filed with the Commission, along with offering statements on Forms 1-A, indicated that the capital raised would be used by HempAmericana "to grow its business." These misrepresentations were misleading because they failed to disclose: (i) that significant percentages of the offering proceeds were going to be used to promote the stock; and (ii) that the promotion was designed to allow HempAmericana's biggest stock purchaser (*i.e.,* the GPL Defendants) to profit from selling their stockholdings.

**B. The GPL Defendants Installed Seaside and Kauderer to Promote HempAmericana**

24. The GPL Defendants conditioned their investment in HempAmericana on the company hiring Seaside to promote the company's stock.

25. The GPL Defendants introduced Rosillo to Adams and Kauderer.

6

26. The GPL Defendants required that Rosillo hire Seaside as a "consultant," with the express understanding that Seaside, in turn, would hire Kauderer to undertake a wide-ranging promotional campaign to enable the GPL Defendants to sell their shares at a profit.

27. While HempAmericana publicly disclosed retaining Seaside as a consultant, the fact that Adams hired Kauderer for the promotion had the effect of distancing HempAmericana and the GPL Defendants from the funding of the promotional activity.

28. Early on in the scheme, the GPL Defendants directed the specific split of offering proceeds between HempAmericana and Seaside.

29. For example, in August 2017, when the GPL Defendants purchased 16 million shares of stock for $80,000, the GPL Defendants directed that $50,000 be sent to HempAmericana and $30,000 be sent to Seaside.

**C. Seaside Made Payments to Kauderer as Part of the Promotion**

30. After receiving the GPL Defendants' money through HempAmericana, Seaside forwarded varying amounts, generally more than half, to Kauderer for promotional activity.

31. Overall, of the $7.4 million in stock purchase proceeds that the GPL Defendants paid to HempAmericana during the scheme, $2.18 million was paid by HempAmericana to Seaside, and Seaside in turn forwarded more than $1.5 million of it, or approximately seventy percent, to Kauderer.

32. Kauderer was in direct communications with both Rosillo and the GPL Defendants about promoting HempAmericana stock.

33. From communications between Dillon and Kauderer in June 2019 concerning the GPL Defendants' budget for funding promotions, Dillon understood that Kauderer and Adams were one and the same and were splitting the money paid to Adams.

34. In May 2019, Adams assured Kauderer that he would be compensated for his promotional efforts, but that the funds could not come directly from HempAmericana's escrow account because the GPL Defendants' brokerage firm would not permit it, so the funds had to come from Rosillo instead.

**D. Kauderer Funded Promotions of HempAmericana Using False Disclaimers**

35. Kauderer used HempAmericana's proceeds from the GPL Defendants' stock purchases to hire people to promote the stock.

36. Kauderer used two kinds of promoters.

37. First, he hired people whom he understood to have email lists or social media mechanisms that would enable them to get buyers to purchase the stock, apparently with the promise of buying cheaper stock in advance of the promotion.

38. Second, he hired people who would in turn pay others to engage in more traditional promotional activity during the actual "pump."

39. As an example of how the scheme unfolded, in January 2018, the GPL Defendants purchased $170,000 of HempAmericana stock. $70,000 of the sales proceeds went to Seaside, and $55,000 of that amount went to Kauderer, who in turn paid an entity, "Entity A."

40. Later that month, another entity, "Entity B," put out email blasts promoting HempAmericana stock and disclosing that it was compensated by Entity A, which was described as a non-affiliated third party.

41. The promotion's disclaimer said that Entity B did not own any shares in HempAmericana, and it made no reference to anyone intending to sell shares into the promotion.

42. Kauderer's hiring of such intermediaries assured that the GPL Defendants' connection to the promotional campaigns was obscured.

43. The promotions failed to disclose either HempAmericana or the GPL Defendants as the ultimate source of funding for the promotions.

44. Further, the stock promotions failed to disclose Seaside's and Kauderer's roles in facilitating payment from the GPL Defendants to downstream promoters, and failed to disclose that Seaside and Kauderer were actually affiliated with and assisted by the issuer, HempAmericana.

45. Finally, the promotions failed to disclose that the GPL Defendants, the ultimate funder of the promotions, intended to sell out their shares during the promotion.

46. Some disclosures included a boilerplate statement that the funder, issuer, or their affiliates "likely wish to liquidate shares of the profiled company." The statements were misleading because the GPL Defendants' intent at the outset of investment was for HempAmericana to funnel significant proceeds from the GPL Defendants' investment to promoters to enable the GPL Defendants to sell their stock, and then reinvest in HempAmericana for subsequent rounds of promotion.

47. Contemporaneous investors in HempAmericana stock would have cared that the promotions were being funded by the company and an investor so that the investor could sell during the promotions.

### E. The GPL Defendants' Stock Sales Coincided with Kauderer's Promotion

48. The HempAmericana scheme was very lucrative for the GPL Defendants.

49. The GPL Defendants paid $7.4 million to acquire more than 1.5 billion shares of HempAmericana stock and, in conjunction with Kauderer's promotional activity, sold the shares for more than $18.4 million, for approximately $11 million in illegal profit.

50. Kauderer kept the GPL Defendants apprised of the promotions, advising on when

the buying volume would increase and on the strategy for selling the stock.

51. On at least one occasion, Kauderer requested that the GPL Defendants sell some stock into the market at a lower price (pre-promotion) to enable Kauderer's "guys," *i.e.,* his sub-promoters, to purchase the stock more cheaply, apparently because of a shortfall in Kauderer's budget for promotion.

### F. Tolling Agreements

52. On October 21, 2022, Kauderer signed a tolling agreement that suspended the running of the applicable statute of limitations from October 20, 2022 to January 19, 2023.

53. On March 1, 2023, Kauderer signed a tolling agreement that suspended the running of the applicable statute of limitations from January 19, 2023 to April 18, 2023.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Sections 17(a)(1) and (3)**

54. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 53.

55. Kauderer, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (i) knowingly or recklessly employed one or more devices, schemes or artifices to defraud, and/or (ii) knowingly, recklessly, or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

56. By reason of the foregoing, Kauderer, directly or indirectly, violated and, unless enjoined, will again violate Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rules 10b-5(a) and (c) Thereunder

57.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 53.

58.     Kauderer, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly (i) employed one or more devices, schemes, or artifices to defraud, and/or (ii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

59.     By reason of the foregoing, Kauderer, directly or indirectly, singly or in concert, violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Kauderer and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering Kauderer to disgorge all ill-gotten gains he received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act

Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

### III.

Permanently prohibiting Kauderer from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

### IV.

Granting any other and further relief this Court may deem just and proper.

### JURY DEMAND

The Commission demands a trial by a jury.

Dated: New York, New York
May 17, 2023

/s/ Antonia M. Apps
_____
ANTONIA M. APPS
REGIONAL DIRECTOR
Thomas P. Smith, Jr.
Adam S. Grace
Paul G. Gizzi
Brenda Wai Ming Chang
John C. Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY  10004-2616
212-336-0077 (Gizzi)
Email: gizzip@sec.gov